IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**FIRST STATE BANK and**
**PINNACLE BANK n/k/a CENTRAL BANK**                           PLAINTIFFS

V.                          CASE NO. 5:17-CV-5084

**CITY OF ELKINS, ARKANSAS**                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

Now before the Court are a number of pending motions. The first two were filed on July 11, 2017, by Plaintiffs First State Bank and Pinnacle Bank n/k/a Central Bank (collectively, "First State Bank"): a Motion to Voluntarily Dismiss Without Prejudice Federal Claims Only (Doc. 22) and a Renewed Motion to Remand (Doc. 23). First State Bank had filed a motion to remand earlier in the litigation, see Doc. 10, which had been denied by the Court during a hearing on June 27, 2017. The Court explained its reasons for the denial in a written Order (Doc. 17), essentially finding that Counts III and V of the Complaint concern issues of federal law, and the Court may therefore exert federal subject-matter jurisdiction over these federal claims, as well as supplemental jurisdiction over the state-law claims in Counts I, II, and IV. Also during the hearing, the Court suggested to counsel for First State Bank that if his client wished to voluntarily dismiss its federal claims and renew its motion to remand, the Court would be more amenable to that strategy if it were done in the next two weeks, rather than months into the litigation. See Transcript, Doc. 21, pp. 72-73. It appears that counsel heeded the Court's warning and filed First State Bank's Motion to Voluntarily Dismiss and Renewed Motion to Remand to Washington County Circuit Court exactly two weeks after the hearing.

In an interesting turn of events, on July 14, 2017, before the Court could consider

and rule on First State Bank's pending motions, Defendant City of Elkins, Arkansas ("Elkins") filed its own Motion to Dismiss (Doc. 24) and Brief in Support (Doc. 25), arguing in favor of the Court dismissing the entire case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, or perhaps in the alternative, Elkins argued that First State Bank failed to exhaust its administrative/appellate remedies prior to filing suit, and as a result, this Court—and indeed any court—lacked jurisdiction to hear all claims related to Elkins' decision to issue a building moratorium on houses in a subdivision owned by First State Bank.

Elkins also filed Responses to First State Bank's Motion to Dismiss and to the Renewed Motion to Remand, see Docs. 26-28, suggesting that the only possible reason why First State Bank would want to dismiss its federal claims was to engage in impermissible forum shopping, and that dismissing the federal claims at this juncture would result in a net waste of judicial time and effort (presumably because the Court had already invested some amount of time and resources in the case up until then). Not surprisingly, First State Bank filed a Reply (Doc. 29) to Elkins' Responses, first denying that it was forum shopping, and next observing that it has argued consistently that the issues of state law presented in this lawsuit are both substantive and novel, and should therefore be heard by a state tribunal.

Yet another motion was filed in the case on August 4, 2017—this time by First State Bank. It requested judgment on the pleadings as to Count I of the Complaint. See Doc. 31. The strategy of filing such a motion was a bit confusing to the Court because the Renewed Motion to Remand was still pending. Nevertheless, Elkins responded to the Motion for Judgment on the Pleadings, see Doc. 33, and First State Bank promptly moved

to strike that Response, see Doc. 34, arguing that the brief was improper because it responded to the pending Motion and also replied to another motion entirely, without first seeking leave to do so.

Finding itself inundated with motions, the Court held a telephonic status hearing on October 3, 2017, for the purpose of clarifying what relief the parties now desired from the Court. The parties agreed that the first issue for the Court to take up was raised in Elkins' Motion to Dismiss, namely, that the Court's lacks jurisdiction to hear all claims relating to the moratorium. The parties further agreed that if the Court's jurisdiction over these claims is found to be proper, then the next issue to address would be the parties' cross-motions for judgment as to Count I of the Complaint.

## I. BACKGROUND

According to the Complaint, on October 5, 2006, the Elkins City Council accepted the Final Plat for the Stokenbury Farms subdivision, which consisted of 138 lots, 136 of which were residential, and 2 of which contained detention ponds used to hold the subdivision's storm-water runoff. On the same day the Final Plat was submitted for approval, the Mayor of Elkins, City Clerk, Chairman of the Planning Commission, Building Inspector, and representatives from the Water, Police, and Fire Departments all approved the Final Plat. The subdivision's engineer executed and stamped the Final Plat and then filed it of record in the office of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas.

After the Final Plat was recorded, First State Bank agreed to refinance the debt that Stokenbury Farms, LLC, had incurred in developing and constructing the subdivision.

About two years later, on September 26, 2008, Elkins filed a lawsuit against Stokenbury Farms, LLC, and some other entities that were involved in the construction and engineering of the detention ponds. The lawsuit alleged that the ponds failed to perform as a result of defective workmanship and did not drain. It appears the lawsuit was non-suited by Elkins, allegedly because Elkins had decided to wait and let the subdivision be "built out" first before taking further action. (Doc. 3, p. 6).

At some point after August 30, 2010, Stokenbury Farms, LLC defaulted on its financial obligations, and in lieu of foreclosure, deeded 105 undeveloped residential lots to First State Bank. Importantly, First State Bank did *not* take back two of the lots—the ones that contained the problematic detention ponds that had been the source of conflict with Elkins for the past several years. The Complaint explains that the detention-pond lots remained in the ownership of "an entity related to the developer or this entity's member(s)." *Id.* at 7. The Complaint also makes clear that First State Bank believes it bears no financial responsibility for the condition and upkeep of the ponds, since it does not own the lots that contain the ponds.

Concern about the condition of the detention ponds continued to ebb and flow throughout the next two years until, finally, in late 2014, Elkins began complaining to First State Bank about the high grass surrounding the ponds. Elkins mowed the grass at some point, and then charged First State Bank for the mowing service—allegedly double what the service actually cost. First State Bank then refused to pay the bill, which led to more litigation, and the relationship between Elkins and the Bank deteriorated. On November 17, 2016, Elkins' City Council enacted a moratorium "on issuance of building permits in Stokenbury Farms Subdivision until an engineer certifies the functionality of the existing

retention ponds." See City Council Minutes, *id.* at 24.

First State Bank maintains that it did not receive notice that Elkins was even considering issuing such a moratorium, and did not receive actual notice that the moratorium had been passed until February 28, 2017, after First State Bank issued a direct request to Elkins for this information. Although at the time First State Bank believed that Elkins lacked the legislative authority to issue a moratorium on building, the Bank nonetheless requested that Elkins supply it with "definitive conditions upon which Elkins would agree to lift the moratorium . . . ." *Id.* at 12. In First State Bank's view, Elkins' response to this request was "vague and non-committal." *Id.* First State Bank then attempted "to obtain a building permit for residential lots within the Subdivision" but was "rebuffed by Elkins." *Id.* Fearing that it would lose money on its investment in the subdivision due to the imposition of the moratorium on further construction, First State Bank filed suit in Washington County Circuit Court on April 12, 2017, challenging the constitutionality of the moratorium and Elkins' authority to enforce it. The case was ultimately removed to this Court on May 12, 2017. *See* Notice of Removal, Doc. 1.

Setting aside for now the substantive issue of whether Elkins, a city of the second class as defined by the Arkansas legislature, *see* Ark. Code Ann § 14-37-103, possessed the authority to issue the moratorium in the first place, Elkins argues in its brief in support of its Motion to Dismiss that this Court lacks jurisdiction to decide this issue at all, due to the fact that First State Bank failed to comply with Arkansas District Court Rule 9(f)(2)(A) ("ADC Rule 9"), which pertains to appeals of "any final administrative decision" through the "filing [of] a notice of appeal with the clerk of the circuit court having jurisdiction of the

matter within thirty (30) days from the date of that decision." The time to file the appeal starts to run on either "the date of the vote, if any, or the date that a written record of the vote is made." *Id.* Elkins' argument is that First State Bank failed to file an ADC Rule 9-compliant notice of appeal of the City Council's moratorium within 30 days of the date the moratorium was passed, so the Bank's ability to contest the legality of the moratorium *now*, in this venue, has been forfeited, and this Court lacks jurisdiction to decide it.

First State Bank responds that ADC Rule 9's requirements only apply to decisions concerning the planning-commission statute, as described in Ark. Code Ann. § 14-56-425(a). That section of the Arkansas Code states as follows:

> Appeals from the final administrative or quasi-judicial decision by *the municipal body administering this subchapter* shall be taken to the circuit court of the appropriate county using the same procedure as for administrative appeals of the District Court Rules of the Supreme Court.

*Id.* (emphasis added). First State Bank suggests that the "municipal body administering this subchapter" refers to a city's planning commission, which is responsible for administering the city's zoning laws, ordinances, and rules regarding land use. The Bank argues that Elkins' moratorium was a legislative decision by the City Council, not "an administrative or quasi-judicial decision" that was required to be appealed in the manner set forth in ADC Rule 9.

## II. LEGAL STANDARD

Elkins makes its ADC Rule 9 argument pursuant to either Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction, or 12(b)(6), for failure to state a claim. The Court of Appeals for the Eighth Circuit has explained that

[a] court deciding a motion under Rule 12(b)(1) must distinguish between a

6

> "facial attack" and a "factual attack." In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted).

Here, the Court concludes that Elkins' jurisdictional challenge is a purely facial attack, rather than a factual attack, as neither it nor First State Bank has cited to nor relied upon any matters outside the pleadings in briefing this argument. Accordingly, the Court will evaluate the challenge to its jurisdiction by assuming that "all factual allegations in the pleadings are true and interpret[ing] them in the light most favorable to the nonmoving party"—which in this case is First State Bank. *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted).

### III. DISCUSSION

#### A. Challenge to the Court's Jurisdiction

The state and federal claims in this case are factually intertwined, such that a decision made on Count I, which requests a declaratory judgment as to Elkins' statutory authority to regulate the building of houses, will likely affect all the other claims, including those brought under the Takings Clause of the Fifth Amendment to the U.S. Constitution, and the Due Process Clause of the Fourteenth Amendment. The primary question for the Court to decide is whether it may properly exert jurisdiction over the claims relating to the validity of the moratorium. Elkins contends that First State Bank improperly challenged the moratorium by filing suit in state court before following the set procedure for appealing a

municipality's final administrative decision, as set forth in ADC Rule 9.

The Court has analyzed the Complaint, the parties' arguments as to jurisdiction, the text of ADC Rule 9, and the text of Ark. Code Ann. § 14-56-425(a), which is the section of the Arkansas Code that governs administrative appeals of final municipal actions. After careful consideration, the Court finds that First State Bank was under no requirement to comply with ADC Rule 9 prior to filing suit to contest the validity of the moratorium—or more precisely, to contest Elkins' authority to issue such a moratorium as a city of the second class.

In the first place, ADC Rule 9's strict administrative appeal procedures govern a "final administrative or quasi-judicial decision" of a municipal body. Here, the issuance of a moratorium on building by Elkins was not a final administrative decision that was subject to administrative appeal, as the moratorium constitutes only a temporary halt on building until certain conditions are met. The Arkansas Supreme Court has previously interpreted what a "final decision" means in the context of Section 14-56-425(a), finding that "for an order or action to be final, it must terminate the action . . . and conclude the parties' rights to the subject matter in controversy." *Stromwall v. City of Springdale Planning Comm'n*, 350 Ark. 281, 284 (2002). An order or action is not final, by contrast, "[w]here further proceedings are contemplated, which do not involve merely collateral matters . . . ." *Id.*

The parties have not cited the Court to any cases that deal with a city council's issuance of a moratorium on home-building in an already platted and approved residential development. But focusing on the plain language of the moratorium at issue here, it contemplates further action by the parties once steps are taken to abate an identified nuisance. Since the moratorium contemplates further action by both the property owner

8

and Elkins, as well as further proceedings concerning both the abatement of the nuisance and the resumption of building on the land, the moratorium itself does not constitute a "final decision" from which First State Bank could reasonably appeal.

The Court's conclusion is bolstered through a comparison of the facts of this case to the facts in a sampling of Arkansas cases involving "final administrative decisions" deemed subject to ADC Rule 9's requirements. The cases include: (1) a municipal wastewater utility's determination that a water-bottling company had violated a sewer rate ordinance, *Mountain Pure, LLC v. Little Rock Wastewater Utility*, 2011 Ark. 258, at *4 (2011); (2) a city council's zoning decision that denied a resident's request to divide his land into different tracts, *Combs v. City of Springdale*, 366 Ark. 31, 32 (2006); (3) a city council's approval of a proposed plat, with the condition that the landowner construct sidewalks on the property, *Green v. City of Jacksonville*, 357 Ark. 517, 521 (2004); (4) a city council's condemnation order that resulted in the demolition of a resident's property, *Ingram v. City of Pine Bluff*, 355 Ark. 129, 135 (2003); (5) a city planning commission's approval of a preliminary plat authorizing construction of homes in a subdivision, *Pierce Addition Homeowners Assoc., Inc. v. City of Vilonia Planning Comm'n*, 76 Ark. App. 393, 394-95 (2002); and (6) a city council's denial of a landowner's appeal of a planning commission decision concerning the replatting of land, *City of Jonesboro v. Vuncannon*, 310 Ark. 366, 371-72 (1992).

What all of these cases have in common is that the municipal bodies in question either imposed a penalty on a landowner, or else took a definitive action that finally and conclusively affected real property, either through zoning orders, condemnation orders, or

9

orders approving or disapproving proposed plats for land development. The moratorium at issue in the case at bar does not fit any of the above fact-patterns. The effect of the moratorium was to pause the issuance of new building permits until certain conditions are met. The moratorium does not presume to halt current construction in the subdivision, nor does it alter the current zoning or platting of the land at issue. Thus, the City Council's actions in passing a moratorium were not tantamount to a "final decision" contemplated by Section 14-56-425(a).

Yet another reason why ADC Rule 9 does not apply here is that the City Council's passage of the moratorium was not an administrative decision. The decision was a legislative one, and an aggrieved party has the perfect right to challenge a city council's non-final legislative decision directly in state court without first observing any of the procedural requirements mandated by ADC Rule 9. A typical example of an administrative decision would be a city council's approval (or disapproval) of a planning commission's recommendation concerning zoning. The law is established that ADC Rule 9 applies to "actions of the city council, when the act complained of is the city's application of its own zoning regulations." *Green*, 357 Ark. at 521. By contrast, "when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly." *Summit Mall Co., LLC v. Lemond*, 355 Ark. 190, 201(2003).

"[T]he test for determining whether a resolution or ordinance of a municipality is legislation is whether the proposition is one that makes new law or, rather, executes a law already in existence." *Id.* The Arkansas Supreme Court in *Summit Mall Co., LLC v. Lemond* explained that when a city board approves a city's planning commission

10

recommendation, but "add[s] new, special conditions to accommodate the rezoning," and does so "to improve the infrastructure of the impacted area," then the board acts legislatively, rather than administratively, in a way that has "future ramifications." *Id.*

Similarly, when Elkins' City Council approved the moratorium on the issuance of new building permits, it created "new, special conditions" burdening First State Bank's ability to obtain future building permits—conditions having nothing to do with Elkins' zoning ordinances or with the approval or disapproval of a planning commission recommendation. Instead Elkins took affirmative, forward-looking action designed to improve public health and safety in the subdivision. As was the case in *Summit Mall*, First State Bank was "not required to proceed under § 14-56-425," *id.* at 202, to challenge Elkins' imposition of the moratorium, since Elkins' action was not an administrative one. Pursuant to the Court's reasoning above, the Court's jurisdiction over the state-law claims is proper and not barred due to lack of compliance with ADC Rule 9.

### B. Certifying the Question of Law in Count I

The parties have filed cross-motions for judgment as to Count I of the Complaint. Elkins filed a Motion to Dismiss Count I, and First State Bank filed a Motion for Judgment on the Pleadings as to Count I. During the telephonic hearing with counsel on October 3, 2017, the Court explored what the next appropriate step would be if it found—as it has now—that Elkins' compliance with ADC Rule 9 was not required prior to filing suit. Elkins believes the issue presented in Count I is neither novel nor complex, and that the Court should simply rule on it. First State Bank disagrees and favors certifying the disputed issue of state law to the Arkansas Supreme Court.

The United States Supreme Court has opined that certifying a novel question of law that touches on an important public policy concern of interest to a state "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Here, the question of state law at issue is one of first impression, and will likely be determinative of all the causes of action currently pending in this case. Moreover, the question's resolution is of substantial public importance in Arkansas, as it will clarify whether cities of the second class are, or are not, empowered by the legislature to regulate home construction.

Recognizing that the use of the certification procedure "rests in the sound discretion of the federal court," *id.*, the Court finds that the interests of justice favor certifying the issue of law set forth in Count I of the Complaint to the Arkansas Supreme Court. Below, the Court will summarize each party's position on the certified question.

### 1. First State Bank's Position

First State Bank filed this lawsuit after Elkins' City Council passed a moratorium on the issuance of building permits in the Stokenbury Farms subdivision, which contains 105 lots owned by First State Bank. The moratorium will remain in place until an engineer certifies the functionality of the detention ponds that are located on the only subdivision lots *not* owned by First State Bank. The reasons Elkins gave First State Bank for imposing this moratorium was that the detention ponds did not drain properly, had not been maintained, had become overgrown with vegetation and clogged with dirt and debris, and could cause health and safety risks to the public.

First State Bank argues that Elkins lacked the authority to issue the moratorium

because it is a city of the second class, and only cities of the first class may regulate home-building and either issue or refuse to issue home-building permits. First State Bank's argument relies on its interpretation of Ark. Code Ann. §§ 14-56-201 and 14-56-202. Section 14-56-201 states that all municipal corporations shall be empowered to "[r]egulate the erection, construction, reconstruction, alteration, and repair of buildings." But in First State Bank's view, Section 14-56-202 qualifies this broad grant of authority enjoyed by all municipalities by listing certain "[a]dditional powers of cities of the first class." These "enlarged and additional powers" include the power to "[r]egulate the building of houses," "[p]rovide that no house or structure shall be erected within the city limits except upon a permit," and "[p]rovide that no permit shall be issued for the building of any house or structure deemed to be unsafe, unsanitary, obnoxious, or detrimental to the public welfare." Ark. Code Ann. § 14-56-202.

Although First State Bank interprets Section 14-56-201 as empowering all municipalities to regulate the construction or repair of "buildings"; the Bank interprets Section 14-56-202 as limiting that power when it comes to the construction or repair of houses. According to First State Bank, Section 14-56-202 provides that only cities of the first class may regulate the construction of houses or issue building permits for such construction. The Bank firmly believes that the legislature's use of the term "buildings" in Section 14-56-201 and "house[s] or structure[s]" in Section 14-56-202 was not accidental, and was, in fact, designed to remove all regulatory authority over home construction from cities of the second class and from incorporated towns. To First State Bank, this is the only logical interpretation of Section 14-56-202, and any other interpretation would "deprive[] [it] of any and all meaning . . . ." (Doc. 32, p. 7).

13

## 2. Elkins' Position

Elkins disagrees with First State Bank's interpretation of Sections 14-56-201 and 14-56-202. While First State Bank focuses on the fact that Section 14-56-202 discusses the construction of "houses" rather than "buildings," Elkins points out that a house is also a building, and that the legislature intended that cities of the second class be empowered to regulate the construction of all "buildings," by virtue of the authority conferred on all municipalities, regardless of size, through the planning-commission statute at Ark. Code Ann. § 14-56-416.

The planning-commission statute empowers all municipalities to create planning commissions that will, in turn, establish zoning ordinances "for the entire area of the municipality." Ark. Code. Ann. § 14-56-416(a)(1). Through the adoption of a zoning ordinance, a city's planning commission "may regulate the location, height, bulk, number of stories, and size of open space; lot coverage, density and distribution of population; and the uses of land, buildings and structures," Ark. Code Ann. § 14-56-416(a)(3)(A); and the planning commission may then enforce that ordinance "through denial of the issuance of building permits and use permits," Ark. Code Ann. § 14-56-416(c).

Elkins reads the planning-commission statute to mean that the legislature intended *all* cities to have the power to regulate land use, primarily through the construction of buildings. In Elkins' view, interpreting Section 14-56-202 as First State Bank suggests would create "an absurdity that defies all common sense" by essentially invalidating the planning-commission statute and nullifying a city of the second class's ability to engage in "home rule" through municipal planning. (Doc. 33, p. 6).

14

Elkins argues that the legislature enacted Section 14-56-202 to make clear that cities of the first class may not only regulate buildings, but also other "structures." *See* Doc. 25, p. 5. To Elkins, it makes more sense to focus on the term "structures," rather than "houses" in Section 14-56-202, because to do otherwise would mean that the legislature intended "[c]ities of the first *and* second class . . . to establish zones limiting the character of buildings that may be erected therein," Ark. Code Ann. § 14-56-301(a) (emphasis added), while empowering only cities of the first class to regulate the building of homes.

## IV. CONCLUSION

In view of the Court's discussion above, **IT IS ORDERED** that the United States District Court for the Western District of Arkansas hereby **CERTIFIES** to the Arkansas Supreme Court the following question, which is likely to be determinative of the issues now pending in the case before this Court and for which there appears to be no controlling precedent in the decisions of the Arkansas Supreme Court:

> Whether Ark. Code Ann. § 14-56-202 confers upon cities of the first class the exclusive power to issue or refuse to issue building permits and to regulate the building of houses, and thereby denies such power to cities of the second class, despite the "general powers" listed in Ark. Code Ann. § 14-56-201.

This Court's phrasing of this question is not meant to limit the Arkansas Supreme Court's inquiry, and the Court acknowledges that the Arkansas Supreme Court may reformulate the question presented.

**IT IS FURTHER ORDERED** that Plaintiffs First State Bank's and Pinnacle Bank n/k/a Central Bank's Motion to Voluntarily Dismiss Without Prejudice Federal Claims Only (Doc. 22) and Renewed Motion to Remand (Doc. 23) are **DENIED**.

15

**IT IS FURTHER ORDERED** that Defendant City of Elkins, Arkansas' Motion to Dismiss (Doc. 24) is **DENIED IN PART AND STAYED IN PART** as follows: the Court **DENIES** Defendant's Motion regarding the Court's lack of subject-matter jurisdiction over the state-law claims brought by Plaintiffs, but otherwise **STAYS** its decision as to the remainder of the Motion, pending a decision from the Arkansas Supreme Court on the certified question. The Clerk of Court is therefore **DIRECTED** to note that this Motion remains pending.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Judgment on the Pleadings (Doc. 31) is **STAYED** pending a decision from the Arkansas Supreme Court on the certified question. The Clerk of Court is therefore **DIRECTED** to note that this Motion remains pending.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend Time to Amend Pleadings or Add/Substitute Parties (Doc. 37) is **GRANTED** to the extent that this case is **ADMINISTRATIVELY STAYED** pending a decision from the Arkansas Supreme Court on the certified question. To the extent necessary, the Court will issue a revised case management order, setting new deadlines, after the Arkansas Supreme Court has issued its decision.

**IT IS SO ORDERED** on this 17th day of October, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE