IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| FIRST STATE BANK and<br>PINNACLE BANK n/k/a CENTRAL BANK | PLAINTIFFS |
| V.     CASE NO. 5:17-CV-5084 | |
| CITY OF ELKINS, ARKANSAS | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

The Plaintiff banks (collectively, "First State Bank" or the "Bank") received deeds in lieu of foreclosure to 105 residential building lots in the Stokenbury Farms Subdivision, in Elkins, Arkansas. In November 2016, as the Bank was marketing the lots, the Defendant, City of Elkins ("Elkins" or "City"), imposed a moratorium on the issuance of building permits in the subdivision—citing public safety concerns having to do with defective and unmaintained drainage detention ponds. In April of 2017, First State Bank sued Elkins in state circuit court for—among other things—a declaration that the moratorium was illegal and damages for an unlawful taking of its property without compensation. Because two of the Bank's claims presented federal questions, the City elected to remove the suit to this Court. The Bank sought a remand to state court. Thus began a now two-year procedural saga during which the parties have completely reversed their original positions on litigating these issues in federal court. Along the way, all concerned—certainly including this Court—have endeavored to pursue a prudent and judicially efficient path forward. Unfortunately, and with much regret in hindsight, the Court now concludes that it is without jurisdiction, and therefore the journey in this forum must end.

In summary, what has occurred is that Elkins inserted a brand-new one-paragraph jurisdictional argument into its 25-page response to the Bank's motion for summary judgment, see Doc. 63 at 5. Elkins briefly mentioned the same argument again in its own cross-motion for summary judgment, see Doc. 68 at 7. In stark contrast to its removal arguments two years ago, the City now asserts that the Court lacks subject-matter jurisdiction over the Bank's Fifth Amendment taking claim, as well as the closely related Fourteenth Amendment due-process claim, which alleges that Elkins failed to provide the Bank with sufficient notice before it enacted the moratorium. Collectively, the City's briefing on this argument was superficial, at best. So, it came as no surprise that First State Bank's response to this late-comer was terse and dismissive, with no detailed discussion of the relevant authorities, see Doc. 80 at 6-7. In effect, the Bank's bottom-line response was that we've all come too far down the federal path to turn back now. The Court was inclined to agree. But after exploring the City's argument, the Court uncovered a rather deep vein of authority that undermined the appropriateness of federal jurisdiction.

After inviting the parties to take a deeper look for themselves, see Docs. 91, 92, the Court is now well persuaded that the federal claims are not ripe, and the case must be remanded to state court for further resolution. An analysis of the procedural history of the case appears below, followed by a discussion of the legal authority supporting the Court's decision.

## I. PROCEDURAL BACKGROUND

First State Bank originally filed its complaint in the Circuit Court of Washington County, Arkansas, on April 12, 2017. The Bank's suit was predicated on the notion that Arkansas statutory law granted cities of the first class the exclusive authority to issue—or refuse to issue—residential building permits. Since Elkins was (at the time) a mere

city of the second class, the Bank alleged that the City's prohibition on development of the Stokenbury subdivision was illegal. Thus, the Bank argued, Elkins' unlawful moratorium constituted an economic taking of constitutional dimension. Elkins removed the case to this Court on May 12, 2017, noting that the complaint asserted both state-law questions and federal-law questions. The Bank's claims are summarized as follows:

- Count One was a cause of action for declaratory judgment under the Arkansas Uniform Declaratory Judgments Act ("AUDJA"), Ark. Code Ann. § 16-111-101, *et seq.*, seeking a legal declaration from the Court that Elkins lacked the statutory authority—as a city of the second class—to regulate the construction of homes within the city limits.

- Count Two was also a claim under the AUDJA seeking a declaration that the building moratorium issued by Elkins was without a rational basis and was therefore unlawful and improper.

- Count Three asserted that Elkins' issuance of the building moratorium on undeveloped lots in a subdivision owned by the Bank deprived the Bank of all economic use of the lots and thereby constituted a taking under both the Arkansas and the United States Constitutions.

- Count Four alleged a violation of the Arkansas Private Property Protection Act, Ark. Code Ann. § 18-15-1701, *et seq.*, as a result of Elkins' constructive taking of the Bank's land.

- Count Five asserted a due-process claim under both the Arkansas and United States Constitutions, as well as a violation of 42 U.S.C. § 1983.

On June 9, 2017, the Bank filed a motion to remand the case back to state court (Docs 10-11). Although the Bank conceded that there were federal constitutional questions presented in the lawsuit, its motion urged the Court to stay the federal questions, decline supplemental jurisdiction of the state-law causes of action, and send the case back to state court. More specifically, the Bank argued: (1) that the case presented, at its core, a novel issue of state law that the state court would be better equipped to decide, and (2) the state-law claims, collectively, substantially predominated over any of the federal claims.[1]

In response to the remand motion, Elkins emphasized that "the validity of moratoria is governed by *United States* Supreme Court precedent" and "[t]he dispositive issue [will be] determined through analysis under *federal jurisprudence*" because "[t]he Arkansas Supreme Court's 'takings' jurisprudence is in lockstep and explicitly relies on U.S. Supreme Court precedent." (Doc. 14 at 3 (emphasis added)). Elkins also argued that "the state claims here are subsumed in the federal claims and this Court should exercise its supplement[al] jurisdiction to address all five Counts." *Id.* at 4. All of that is to say that at no point during the remand debate in mid-2017 did Elkins suggest that this Court lacked the ability or authority to adjudicate the federal taking and due-process claims because of a lack of subject-matter jurisdiction, or due to a lack of ripeness of the claims, or due

---

[1] Importantly, for purposes of the jurisdictional argument now before the Court, the Bank never argued during its motion to remand that the Court lacked subject-matter jurisdiction over the federal claims or that it ought to stay its decision on the federal claims due to lack of ripeness or for reasons of comity/deference to state law regarding inverse condemnation procedures. In fact, the Bank conceded at the time that the Court could properly exert subject-matter jurisdiction over the federal claims. *See* Doc. 11 at 4 ("The Plaintiffs do not contest that Count Five provides a basis for federal question jurisdiction . . . .").

to reasons of comity/deference to state law/procedure. Quite to the contrary, the City argued during the motion hearing that this Court's jurisdiction—including over the state-law claims—was "clear."[2]

During the hearing on the remand motion, the parties agreed that Count One presented a novel issue of statutory interpretation that was likely dispositive of the remaining causes of action, less and except for damages. As the Bank's counsel explained: "the doorknob issue in this case, you've got to turn it to open up the entire case, . . . is whether under [Ark. Code Ann. § 14-56-] 201 versus 202, . . . Elkins had the right to regulate the construction of houses." (Doc. 21 at 62). The Bank argued that this presented a novel issue of state statutory interpretation, which weighed in favor of remand. This point led the Court to discuss the possibility of certifying the issue to the Arkansas Supreme Court. The Court observed (and parties discussed) whether certifying the question would be a more expedient and cost-efficient path forward, while also in keeping with the principles of federalism and comity. The Court suggested that the parties brief this "doorknob issue" early in the case, and if the Court could not (or should not) predict how the Arkansas Supreme Court would rule, then it would certify the question. See Doc. 21 at 64-65, 78-79.

Ultimately, the Court denied the motion to remand because the Bank agreed that its suit presented federal constitutional claims, and therefore it conceded that federal jurisdiction had been properly exercised. See Doc. 17. Further, the Court found no good

---

[2] Counsel for the City also said, "I would submit that his Honor not only has jurisdiction—well, *it's clear that his Honor has jurisdiction*, but I submit that this Court should exercise its discretion to retain jurisdiction even over the state law claims." (Doc. 21 at 61 (emphasis added)).

reason under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over the Bank's interrelated state-law claims. *Id.* The Court had also observed during the hearing that the Bank could non-suit its federal questions and seek remand again, but the Court would nevertheless have discretion as to whether to retain the remaining state-law claims, or not. So, if the Bank were of a mind to pursue that course, the Court stated it should do so within two weeks, before "the Court had expended substantial time and resources becoming more familiar with the issues." (Doc. 21 at 69-70, 72-73).

On July 11, 2017, exactly two weeks after the Order denying remand was issued, the Bank filed a motion to nonsuit the federal claims (Doc. 22) and a renewed motion to remand (Doc. 23). Three days later, Elkins filed a motion arguing that the Bank's request to nonsuit its federal claims should be denied to prevent the Bank from engaging in improper forum shopping. Instead, the City said the Court should dismiss the entire complaint for failure to state a claim (Doc. 24). Elkins also argued that remand would cause it prejudice and constitute a waste of time and judicial resources. Finally, Elkins offered an alternative argument: First State Bank was barred from raising arguments about the moratorium in *any* court, because the Bank had failed to comply with Arkansas District Court Rule 9(f)(2)(A) ("ADC Rule 9"), and the time to do so had expired. As Elkins explained in its briefing, ADC Rule 9 concerns the procedure by which aggrieved parties must appeal a final administrative decision issued by a city planning commission.

On August 4, 2017, the Bank changed tactics, and despite its renewed motion to remand, the Bank filed for judgment on the pleadings as to Count One of the complaint, seeking a legal declaration that Elkins lacked the authority and any rational basis for

6

issuing the building moratorium in the first place. See Doc. 31. In other words, the Bank was asking this Court to address the doorknob issue after all.

Given this sea change of conflicting motion practice, the Court held a status hearing on October 3, 2017, to make sure it understood the relief the parties were then seeking, and the order in which those issues should be resolved. It was agreed that the first domino should be the City's contention the Court had no jurisdiction because the Bank had failed to timely pursue, much less exhaust, its remedies under ADC Rule 9. Next, it was agreed that the Court should take up the parties' cross-motions for judgment as to the novel doorknob issue in Count One of the complaint. At that time, the Bank was in favor of certifying the question, while Elkins argued that certification was unnecessary because this Court was perfectly capable of ruling on the issue.

On October 17, 2017, the Court issued its Order (Doc. 40) denying the City's jurisdictional argument. The Court found that the Bank was not obligated to comply with the deadlines for filing suit set forth in ADC Rule 9 because all the evidence of record indicated that the building moratorium was not a "final administrative decision" that was subject to administrative appeal in accordance with ADC Rule 9's procedures; instead, the moratorium was only a temporary halt on building until certain conditions were met. Moreover, since the moratorium contemplated further action by both the property owner (the Bank) and Elkins, as well as further proceedings concerning the abatement of the nuisance that had triggered the issuance of the moratorium in the first place, the moratorium could not be considered a "final decision" that was subject to ADC Rule 9's 30-day deadline to appeal. Further, the City Council's passage of the moratorium was not an "administrative decision"—instead, it was a legislative one, and the Court held that

"an aggrieved party has the perfect right to challenge a city council's non-final legislative decision *directly in state court* without first observing any of the procedural requirements mandated by ADC Rule 9." (Doc. 40 at 10 (emphasis added)).

In the same October 17 Order, *id.*, the Court then considered the parties' cross-motions for judgment as to Count One and concluded that it would certify the question of state law to the Arkansas Supreme Court. In taking this path, the Court necessarily denied the Bank's motion to nonsuit the federal claims without prejudice, since at that point, the Bank had reversed its position and wanted the Court to retain jurisdiction in order to certify the question to the Arkansas Supreme Court. The Court also stayed its decision on the rest of Elkins' motion to dismiss (aside from the ADC Rule 9 argument) as well as the Bank's motion for judgment on the pleadings, in favor of waiting for a decision from the Arkansas Supreme Court on the certified question.

The Court framed the certified question as follows:

Whether Ark. Code Ann. § 14-56-202 confers upon cities of the first class the exclusive power to issue or refuse to issue building permits and to regulate the building of houses, and thereby denies such power to cities of the second class, despite the "general powers" list in Ark. Code Ann. § 14-56-201.

(Doc. 40 at 15).

On August 6, 2018, the Arkansas Supreme Court answered the certified question, finding that only cities of the *first* class possessed the power to issue or refuse to issue building permits and to regulate the building of houses. (Doc. 42). The Supreme Court's decision necessarily meant that cities of the *second* class—like Elkins was when it first issued the moratorium in November of 2016—lacked the authority to regulate the building

of houses.[3]  On August 20, the Court conducted a telephonic status conference with the parties about the next steps to be taken in the case.  Then, on October 4, Elkins filed another motion to dismiss (Doc. 47), this time arguing that the entire lawsuit was now moot due to a lack of a case or controversy.  The City explained in this motion that the initial moratorium had been lifted, Elkins had now become a city of the first class, the nuisance that had triggered the imposition of the moratorium had been remediated, and the Bank had sold all of its lots to another buyer.

On October 9, 2018, the Court issued an Order (Doc. 50) finding that Count One's request for declaratory relief was not moot because the Bank was "still engaged in a justiciable controversy against Elkins regarding whether damages are owed as a result of Elkins' unlawful, constructive—albeit temporary—taking of First State Bank's property." *Id.*  In the same Order, and in keeping with the Arkansas Supreme Court's ruling, the Court also granted the Bank's motion for judgment on the pleadings as to the declaratory judgment claim in Count One.  All other claims, including Count Three (the taking claim under the Fifth Amendment to the U.S. Constitution) and Count Five (the due-process claim under the Fourteenth Amendment to the U.S. Constitution) remained for further resolution, and the case was set for trial.

Months later, on January 9, 2019, First State Bank filed a motion for summary judgment (Doc. 57) as to all remaining Counts in the complaint.  Elkins filed its response on January 25 (Doc. 62).  The brief in support of the response (Doc. 63) contained the

---

[3] Subsequent to the Supreme Court's decision, the Arkansas legislature amended Ark. Code Ann. § 14-56-202 to make clear that cities of the second class also possessed the power to issue building permits and regulate the building of houses. 2019 Ark. Acts 574.

following *new* one-paragraph argument about the Court's lack of authority to adjudicate the federal claims:

> The United States Supreme Court has held that a property owner cannot be deemed to have suffered a Fifth Amendment taking until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the relevant state. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195(1985). Further, when the state provides an adequate process for obtaining just compensation, no Fifth Amendment violation occurs until after the compensation is denied. *Ingram v. City of Pine Bluff*, 355 Ark. 129, 137, 133 S.W.3d 382, 387 (2003). Plaintiffs are seeking damages in the federal courts under takings and due process theories, [but] because Plaintiffs have not attempted to seek compensation through state court proceedings and been denied such compensation, as a matter of law, summary judgment for their Constitutional takings claim must be denied.

*Id.* at 5.

When Elkins filed its cross-motion for summary judgment on February 1, 2019, it repeated this same argument that the Court lacked the authority to resolve the federal claims. Elkins cited again to *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 195 (1985), and its progeny for the proposition that a federal court lacks jurisdiction over a plaintiff's federal taking claim when the sovereign that effected the alleged taking was a state or local government and the plaintiff had not yet been denied just compensation through adequate remedies made available by the state.

In one respect, this issue appeared to be about ripeness—or the lack thereof—of the federal taking claim, in that the relevant case law queried when an inverse condemnation claim lodged against a state or local government would be ripe for federal judicial review. In another respect, the issue appeared to be about principles of comity or deference to the state, in that the relevant case law addressed whether a state should

decide its *own* inverse condemnation cases before a federal court had the chance to weigh in.

When First State Bank had the opportunity to respond to the argument, it reminded the Court that it had previously requested the case to be remanded to state court, but *Elkins* had removed to federal court and *Elkins* had fought the Bank's motion to remand early on in the litigation. Though the Bank was entirely correct about this, its briefing neglected to mention the fact that federal subject-matter jurisdiction cannot simply be waived, nor can the Court consider its significant time investment in this case over the past two years as a basis for exerting subject-matter jurisdiction where it does not otherwise exist. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (internal quotation marks and citation omitted)).

## II. DISCUSSION

Though the *Williamson County* decision is the seminal Supreme Court case on this issue, the Court begins its discussion with a case decided one year earlier, *Collier v. City of Springdale*, 733 F.2d 1311 (8th Cir. 1984). The Eighth Circuit's analysis in *Collier* does not conflict with the later holding in *Williamson County*, and the facts in *Collier* are similar to those in the case at bar, as the case involved a taking claim alleged against a city in Arkansas.

In *Collier*, the Eighth Circuit held that a trout farm owner could not seek just compensation in federal court for a constructive taking of his property where state-law

mechanisms provided an adequate way to compensate him for the loss. Collier, the owner, sued the City of Springdale and Springdale Water and Sewage Commission in federal court under a Fifth Amendment taking theory brought under Section 1983. He claimed that his trout farm had been constructively taken without just compensation when the Springdale sewage system accidentally discharged sewage into the water in and around the springs supplying his farm, killing all the trout. The case went to trial and resulted in a $36,740 jury verdict in Collier's favor. However, on appeal the Eighth Circuit reversed the jury's verdict and directed the district court to dismiss the action entirely, observing that:

> [s]everal courts have refused to find a cause of action under 42 U.S.C. § 1983 where a plaintiff alleges a "taking" of his property by the state without due process without first attempting to avail himself of the state mechanisms for compensation following the *de facto* appropriation.

*Id.* at 1314-15. The Court went on to explain that property owners should not be permitted "to bypass adequate Arkansas statutory and administrative provisions specifically designed to appropriately compensate such litigants within a minimum time frame." *Id.* at 1315. In Collier's case, the Court held that "Arkansas provides adequate mechanisms for compensating property owners . . . whose property was taken for public use," which meant that "the availability of these state law mechanisms preclude[d] finding that the taking of Collier's property was in violation of right, privilege or immunity secured by the Constitution or laws of the United States . . . ." *Id.* at 1317.

A year after *Collier* was decided, the Supreme Court took up the same issue in *Williamson County*, announcing that even when a government regulation issued by a city planning commission effected a taking of private property for which the Fifth Amendment ordinarily required just compensation, the jury's verdict awarding damages was

"premature"—or, stated another way, not yet ripe. 473 U.S. at 185. The Court divided its ripeness analysis into two parts. First, it asked whether "the initial decisionmaker ha[d] arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury." *Id.* at 193. If the decisionmaker had not issued a final decision, then the claim was not ripe. Second, the Court asked whether the claim was ripe in light of the fact that the respondent had not sought just compensation through the procedures the state provided for doing so. *Id.* The Court explained that merely being deprived of property does not state a claim for a constitutional violation. Instead, the constitutional injury only occurs after the state has also "fail[ed] to provide an adequate postdeprivation remedy for the property loss." *Id.* at 196.

Applying the two-part ripeness test of *Williamson County* to the facts in the instant dispute, it is evident that the Bank's taking claim is not ripe. First, the Bank did not "seek variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the [city's] finding that the plat did not comply with [certain requirements]." *Id.* at 188. The moratorium issued by Elkins provided a mechanism by which First State Bank could fix the nuisance that had been identified on the property (a set of defective detention ponds designed to drain storm water run-off) and then potentially begin building again. Under those facts, it is questionable whether Elkins "arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury." *Id.* at 193. But even if the first part of the ripeness test was satisfied in the instant case, it is clear that the second part was not. The Bank did not avail itself of Arkansas' inverse condemnation procedures, and as a result, the Bank cannot argue at this time that it has

afforded the state the opportunity to provide it adequate compensation for the alleged taking.

As *Williamson County* makes clear, a property owner "[h]as not suffered a violation of the just compensation clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." 473 U.S. at 195. After *Williamson County* became law, the Eighth Circuit in *McKenzie v. City of White Hall* held that when a state provides an adequate process for obtaining compensation, no Fifth Amendment violation is recognized until *after* just compensation is denied. 112 F.3d 313, 315 (8th Cir. 1997). *McKenzie* involved a number of subdivision developers who brought Section 1983 claims against the City of White Hall, the city's planning commission, and the planning commissioner, alleging that all of the defendants violated the developers' Fifth and Fourteenth Amendment rights by conditioning the approval of certain building permits on the developers' agreement to surrender a parcel of land that had been designated as a "privacy buffer." The city's planning commission sent the developers a letter stating that the commission would only approve the subdivision if the privacy buffer were dedicated to the city for use as a public street at a later date. *Id.*

The Eighth Circuit panel reviewing *McKenzie* recalled the *Williamson County* ripeness test and decided that even though the injury appeared to be concrete, final, and capable of posing a justiciable question (i.e., the first part of the ripeness test), the "second aspect of ripeness" had not yet been satisfied. *Id.* at 316. As a result, in order to maintain jurisdiction over the claim in federal court, the developers were required to show that "prudential considerations justif[ied] [the] present exertion of federal judicial power." *Id.*

They failed to do so, as they "did not pursue compensation for taking of the privacy buffer through available state procedures." *Id.* at 317. The Court therefore concluded that the federal claim was not ripe, since Arkansas' inverse condemnation procedures were available to the developers, and they had not shown that "a state inverse condemnation action would be futile." *Id.* The developers were precluded from seeking relief in federal court and were instructed instead to "bring an action in the Arkansas courts before their takings claims will be ripe for prosecution in the federal arena." *Id.*

Several years after *McKenzie* was decided, the Eight Circuit turned to the issue again in *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040-41 (8th Cir. 2003). In *Kottschade*, the Court acknowledged that according to the precedent set in *Williamson County*, "all state remedies must be exhausted," even if that meant, in the end, that significant barriers to federal jurisdiction could arise afterward, due to the application of res-judicata and collateral-estoppel principles. *Id.* The *Kottschade* case—like *McKenzie* and the case at bar—involved a property owner developing real estate within a city's geographic limits. The developer brought a Section 1983 claim against the City of Rochester, arguing that certain building conditions the city required before granting him a permit (including a requirement that he provide plans for vehicular and pedestrian traffic, storm water management, and dedicated parkland) amounted to a taking of his property for public use without just compensation. *Id.* at 1039. Although Kottschade argued that the lower court's decision to dismiss the federal claim due to lack of ripeness meant "he may end up being altogether denied a federal forum for what is undoubtedly a federal right," *id.* at 1041, the Eighth Circuit affirmed the lower court's decision, all the while acknowledging that Kottschade may well be right. The Court explained:

15

> We do not know what the result of any state-court action may be. Perhaps plaintiff will win in the state courts. Perhaps he will lose there, but then obtain Supreme Court review on the merits, a review that would at least afford him an appellate federal forum and would be unquestionably conclusive on the lower federal courts. Plaintiff may seek to reserve his federal claims when he files his state-court complaint, and the state courts . . . might honor this reservation. Other possibilities suggest themselves. The point is this: it is simply too early to say now exactly what res judicata or collateral-estoppel argument might be appropriate in the future, and exactly what the answers to any such argument might be. We understand that deferring a decision on this point is frustrating to the plaintiff, but the federal courts do not sit to decide questions in the abstract. If the plaintiff goes to the state courts and loses, and then files a 42 U.S.C. § 1983 action in a federal court, that court, subject to appropriate appellate review, will be in a much better position to determine the effect of the prior state-court adjudication.

*Id.* at 1042.

After *Kottschade* was decided, the Eighth Circuit entertained a number of opportunities to reconsider or reframe this ripeness analysis, but its decisions remained completely in line with *Williamson County*. For example, in *Koscielski v. City of Minneapolis*, 435 F.3d 898 (8th Cir. 2006), the Court affirmed the district court's dismissal of a plaintiff's federal and state takings claims without prejudice as not yet ripe for review. The plaintiff in *Koscielski* suggested—just as First State Bank does in its briefing—that "because the case was removed, the City should be required to waive its ripeness challenge." *Id.* at 903. The Court, however, disagreed and noted that such an argument "would require the Court to refuse to consider whether it has subject-matter jurisdiction over the case . . . ." *Id.*

Next, in *Snaza v. City of Saint Paul*, 548 F.3d 1178 (8th Cir. 2008), the Court of Appeals again affirmed the district court's conclusion that it lacked subject-matter jurisdiction over a federal taking claim brought by a developer against a city that had denied her a building permit. The reason was simple: "The district court concluded that Snaza's takings claim was not ripe because she had not sought and been denied just

16

compensation in a state court inverse condemnation action." *Id.* at 1181. Despite Snaza's insistence that the controlling Supreme Court precedent was "unworkable and doctrinally unsound," the Eighth Circuit simply affirmed that precedent, noting that "[u]nder *Williamson County*, a property owner may not bring a federal claim for violation of the Just Compensation Clause until it has exhausted any available state procedure for seeking just compensation and been denied it." *Id.*

Essentially, there is only one "exception" to the application of the *Williamson County* ripeness test, and that is when a state's inverse-condemnation remedy is so inadequate that it cannot reasonably compensate a plaintiff for an illegal taking. In Arkansas, however, the Eighth Circuit has already decided that the state's procedures for providing just compensation for illegal seizures of property are adequate. *See Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007) ("We have been unable to find a case in which this court has declared a state's inverse condemnation procedures to be inadequate, and in *Collier v. City of Springdale,* 733 F.2d 1311 (8th Cir.1984), we held that Arkansas provides adequate mechanisms for its citizens to be justly compensated for takings."). Though First State Bank argues that "the Arkansas Constitution provides for a right of recovery, [but] it does not provide an adequate procedure sufficient to bar this Court's exercise of jurisdiction," (Doc. 92 at 7), the Court disagrees. *See Cormack*, 474 F.3d at 531.

Finally, the Court declines First State Bank's alternative suggestion that the federal taking claim be held in abeyance, while all other claims—including the due-process claim—be resolved separately (either by this Court or by the state court). Such a suggestion would yield inconsistent results. The federal due-process claim is inextricably

17

bound with the taking claim, as the due-process claim simply alleges that due process was not afforded the Bank when Elkins issued the moratorium that effected a taking of the Bank's property. All the state-law claims similarly depend on whether Elkins' actions constituted an illegal taking. The federal claims are brought in duplicate by the Bank under analogous Arkansas constitutional provisions, and the Bank's Arkansas Private Property Protection Act claim requires consideration of the same facts that underlie the taking claim.

Considering the above analysis, the Court finds that the Fifth Amendment claim under the U.S. Constitution is not yet ripe, pursuant to the test announced in *Williamson County*. The state of Arkansas has not yet decided whether Elkins' actions constituted a taking, and if so, what amount of just compensation would be due to First State Bank. The Court further finds that the Fourteenth Amendment due-process claim is also not ripe, as it its resolution depends entirely on the taking analysis. Finally, the Court finds that Arkansas courts are competent to adjudicate constitutional challenges such as these, where restrictions on a private citizen's use of property are imposed by a local government entity. Both the ripeness and comity considerations articulated herein are jurisdictional in nature and cannot be waived. See *Snaza*, 548 F.3d at 1182.

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that the case is **REMANDED** to the Circuit Court of Washington County, Arkansas, for further resolution due to this Court's lack of subject-matter jurisdiction over the federal claims. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**IT IS FURTHER ORDERED** that all unresolved motions in this case remain pending for the state court to consider.

**IT IS SO ORDERED** on this 16th day of May, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE